STATE of Missouri, Respondent,

v.

Glen David TRASK, Appellant.

No. 38836.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 10, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court May 18, 1979.

Application to Transfer Denied
June 19, 1979.

**418**

Melvin G. Franke, Public Defender, Gary L. Gardner, Asst. Public Defender, Union, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Robert Presson, Asst. Attys. Gen., Jefferson City, Daniel M. Buescher, Pros. Atty., Union, for respondent.

DOWD, Presiding Judge.

Glen David Trask was convicted by the Circuit Court of Franklin County of the manslaughter of an eight month old child and sentenced to six years imprisonment.

Appellant challenges the sufficiency of the evidence supporting his conviction as well as the trial court's findings concerning his defense of mental disease or defect and the admissibility of statements allegedly made by appellant to the police prior to his arrest.

■ As appellant has raised the issue of the sufficiency of the evidence by challenging the trial court's adverse ruling on his motion for judgment of acquittal, we shall consider this point first. The scope of review to be applied to this issue is one in which we regard as true all the evidence and inferences therefrom favorable to the State and disregard all evidence and inferences to the contrary. *State v. Nichelson*, 546 S.W.2d 539, 543 (Mo.App.1977). Since this is a jury waived criminal case, the trial court's findings are deemed to have the same weight as a jury's verdict. Accordingly, the judgment shall be affirmed if supported by substantial evidence. *State v. Sanderson*, 528 S.W.2d 527, 529 (Mo.App. 1975).

The evidence disclosed that the appellant was romantically involved with the victim's mother, and was babysitting with the child in order to become better acquainted with her. While in the custody of the appellant, the child sustained multiple injuries which resulted in her death on July 29, 1975. The autopsy revealed that the victim had suffered bruises and burns on her face and legs and died of an intercranial hemorrhage.

Appellant explained the child's final injury as resulting from a fall she sustained after she wiggled from his arms and landed on a concrete walk. Since the child was breathing irregularly and vomiting following her fall, the appellant said he held her by her feet and applied pressure to her stomach to stop the vomiting. The victim was brought to a hospital and then transferred to St. Louis Children's Hospital where she died.

■ We are of the opinion that the judgment is supported by substantial evidence. Five of the six doctors who testified at the trial opined that the victim's injuries could not have been sustained in the manner described by the appellant. The consensus among the medical experts was that the victim's fatal head injuries were most likely to have been precipitated by blows to the head.

The evidence disclosed that the appellant considered the victim to be spoiled and had told the victim's mother that the child was the only thing standing between them. The victim's grandmother testified that bruises first appeared on the child during periods in which she was in Trask's custody. The burns which appeared on the child's body were explained by Trask as probably

having occurred when he spanked her for crying one day. Apparently the appellant was holding a hot spatula which had come in contact with the victim's body at the time he administered the spanking. The record revealed that the flat metal portion of the spatula was the approximate width of the patches of denuded skin on the victim's body. The trial court did not err in denying appellant's motion for judgment of acquittal. Accordingly, this point is ruled against the appellant.

▪ In his second point, appellant contends that the trial court erred in declining to find that the appellant suffered from a mental disease or defect which rendered him unable to appreciate the wrongfulness of his conduct or conform his conduct to that which was lawful on July 29, 1975. We must preface our treatment of this issue by noting that all persons are presumed to be free of mental disease or defect. § 552.030(7) RSMo 1969. This presumption may be overcome by the defendant's producing substantial evidence to the contrary. *State v. King*, 526 S.W.2d 58, 59 (Mo.App. 1975).

Dr. Mowrer of the St. Louis State Hospital division of Mental Health reported that she had treated the appellant for symptoms of depression in the Fall of 1975. It was her opinion that Trask did not possess the personality traits of a child abuser. She inferred that the appellant was probably depressed at the time the victim sustained her injuries, but stated it was impossible for her to know the nature of Trask's mental state at the time of the victim's death. She concluded by opining that the appellant knew right from wrong and was capable of assisting in his own defense.

Dr. Crane performed the psychiatric testing at the request of the State. His report disclosed that Trask had related that he had never felt crazy and "always thought (he) had it together better than anyone else." Trask had explained that something inside him had "snapped" when he spanked the victim, but that "he was not out of control and knew what he was doing." Dr. Crane concluded that the appellant was under stress at the time of the incident due to personal problems, but opined that Trask was not psychotic at the time of the victim's death. Dr. Crane summarized the test results as indicating "no evidence of psychotic thought content, no evidence of organic central nervous system pathology and no evidence of severe depression." He agreed with Dr. Mowrer that Trask comprehended the difference between right and wrong and was capable of assisting in his defense.

Dr. Sandall, Assistant Superintendent of St. Louis State Hospital was requested by the defense to personally evaluate the appellant as well as the reports of Doctors Mowrer and Crane. Dr. Sandall agreed that Trask's personality traits were not those characteristic of a child abuser. She opined that Trask suffered from psychotic depression, which probably existed during July 1975, but acknowledged to have no direct knowledge as to appellant's state of mind on July 29, 1975.

On the basis of the expert opinions and the facts in the record, the trial court concluded that the appellant comprehended the significance of the crime with which he was charged and tried, and was able to assist in his defense. The court further found that the appellant was not suffering from "any mental abnormality at the time of the crime."

▪ We are of the opinion that the finding was supported by substantial evidence. The appellant failed to sustain the burden of overcoming the presumption of § 552.-030(7) *supra*. The medical experts either had no knowledge of appellant's mental state on July 29, 1975 or concluded that the appellant was not suffering from a mental disease or defect on that date. In such a case, the statutory presumption is not disturbed, and supports the trial court's finding in this regard. As such, point two is ruled against the appellant.

In his third point relied on appellant contends that statements made by him and recorded and transcribed by the prosecuting attorney's investigator were not voluntary because appellant was suffering from a psy-

chotic depression and on drugs at the time of the questioning. The trial court heard evidence on the issue of voluntariness and concluded that the surrounding circumstances of the interview were neither coercive nor threatening. The court further found that the appellant's free will and mental state were unimpaired at the time of the questioning.

■■■ In order for the defendant's statements to be admitted into evidence it is incumbent upon the State to demonstrate voluntariness by a preponderance of the evidence. *State v. Olds,* 569 S.W.2d 745, 751 (Mo. banc 1978). Statements made while under the influence of alcohol will be excluded as involuntary if the inebriation is of manic proportion. "The standard is whether the statement is reliable and whether there is such a lack of awareness or understanding so that in the rare case where it clearly appears, the defendant was so intoxicated so as to be 'unable to appreciate the nature and consequences of his statements'." *State v. Heather,* 498 S.W.2d 300, 304 (Mo.App.1973).

The State introduced the testimony of investigator Scott who had interviewed the appellant three times prior to his arrest. Appellant was interviewed at his home on July 31, 1975 by Scott, and then questioned at the latter's office later that day. The third interview occurred at the appellant's home a few days later. Appellant specifically challenges the admissibility of statements which he made during the second interview, contending that he was under the influence of librium at the time and was suffering from depression. The medical testimony revealed that librium and alcohol have similar effects.

Investigator Scott testified that the appellant voluntarily accompanied him to his office for the second interview. The appellant was not physically restrained at any time, and was free to leave when he wished. Despite the fact that the appellant was not under arrest, Officer Scott read appellant his *Miranda* warnings. After appellant was advised of his rights he explained that he had retained counsel, but wanted to make a statement "to get it off his chest". Appellant took one librium tablet while in Scott's presence. Scott testified that appellant did not appear to be intoxicated, suffered no ascertainable effect from the librium, and was responsive and alert to his surroundings.

Prosecuting Attorney Daniel M. Buescher, who observed the interview at the request of Scott, testified that the appellant did not appear to be intoxicated. Appellant was said to have been alert, spoke without slurring his words, and admitted to having lied in statements previously made to the investigator.

■■■ The trial court did not err in finding that the appellant was capable of appreciating the nature and effects of his statements. Appellant was neither under arrest nor physically restrained. He was not induced to speak by promises of leniency. He offered his explanation of the occurrence although he was admittedly mindful of the fact that his attorney had advised against it. Although the appellant appeared to be tense, he was heard to say that he understood his rights. There is not evidence in the record which warrants the inference that appellant suffered from a mania which vitiated the voluntariness of his statements. Point three is ruled against the appellant.

In his fourth point appellant contends the trial court erred in admitting statements made by the appellant to investigator Scott which were neither tape recorded nor transcribed but testified to at the preliminary hearing by Scott, because the State allegedly did not comply with Rule 25.32(A)(2) and did not disclose said statements to the appellant.

At the trial, the State claimed to have furnished the defense with the tape recording of Scott's interview with the appellant and a transcript of same. The assistant prosecutor's file indicated that the defense had been advised of statements made by the appellant during periods in which the appellant had requested the recorder to be turned off. Appellant's non recorded statements were testified to at the preliminary

hearing by Officer Scott. The defense claimed to have never received a copy of appellant's non recorded statements and contended that no distinction between recorded and non recorded statements was drawn at the preliminary hearing. The defense complained that the State's non-compliance with the discovery rules adversely affected their strategy regarding cross examination of Scott. The court resolved the problem by allowing the State to go forward with all statements made by the appellant to Scott except those which were not recorded and not revealed at the preliminary hearing.

We cannot say that the trial court's treatment of this issue amounted to an abuse of discretion. The criminal discovery rules were structured to preclude surprise and afford the accused the information with which to formulate a defense and meet opposing evidence. *State v. Stapleton,* 539 S.W.2d 655 (Mo.App.1976).

In the present case the defense attorney stated that the prosecution had been cooperative and had offered the State's file for copying purposes. On October 22, 1976 the defense was advised that a part of Officer Scott's testimony at the preliminary hearing stemmed from statements made by the appellant during the period in which the tape recorder had been turned off. The trial began on October 27, 1976. The trial court's action in limiting the evidence of the statements to those recorded statements on the tape and unrecorded statements testified to at the preliminary hearing obviated the inurement of any possible unfairness to the appellant. Defense counsel was present at the preliminary hearing and was aware of the content of Scott's testimony. Furthermore, he was advised of the existence of the unrecorded statements five days prior to trial. In addition, as the majority of the content of the unrecorded statements was cumulative of other evidence introduced at trial, we cannot say that any prejudice resulted to the defense. Point four is ruled against the appellant.

Judgment affirmed.

CRIST, J., and ALDEN A. STOCKARD, Special Judge, concur.