[No. 5678–6–I. Division One. December 1, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. JANICE K. PAINTER, *Appellant*.

*Smith, Kaplan, Withey, Sowa & Salmi* and *Michael E. Withey,* for appellant (appointed counsel for appeal).

*C. Thomas Moser, Prosecuting Attorney,* and *Joan Housing, Deputy,* for respondent.

*Richard Hansen,* amicus curiae.

DURHAM, J.—Defendant shot and killed her stepson, allegedly in self–defense, during an altercation in her home. Following a jury trial, she was convicted of murder in the first degree and sentenced to life imprisonment. She appeals from her conviction and from the trial court's denial of her postjudgment motion for a new trial.

The defendant, Janice Painter (Painter), married Maurice Painter (Maurice) in 1968. She had four children by prior marriages, and Maurice had one son by a prior marriage, Ted Painter (Ted), the deceased. Mutual animosity existed between Painter and Ted throughout the marriage, and in the few months prior to the shooting, the relationship deteriorated even more. During this time, Ted made phone calls to Painter threatening to rape and/or kill her and her children. Painter hired an ex–felon as a bodyguard, obtained a gun, and made repeated inquiries about her rights to act in self–defense from local authorities.

The evidence showed that, at the time of his death, Ted was 5 feet 6 inches and weighed 145 pounds. He was 30 years old, a Viet Nam veteran, and was described as "strong and wiry." Painter was 46 years old and plagued with various physical problems primarily attributable to a

1973 work–related back injury. She occasionally used a crutch, and took medication regularly.

On the day of the shooting, February 15, 1977, Ted came to the Painter home with their permission, accompanied by Denise Adams, a 16–year–old girl who was pregnant with his child. On that day, Painter was using a "cuff" crutch on her left side. Denise testified that after some heated verbal exchanges, Ted walked slowly toward Painter with clenched fists and pushed her. She fell, and he stepped back. As Painter got up, Ted said, "Okay, Jan, go ahead and shoot me." Painter pulled a gun from her right–hand pocket and fired one shot, saying, "I told you if you ever touched me I would kill you . . ." Ted looked down, and reached for his stomach. Painter stood and fired more shots while holding the gun in both hands, straight out in front of her. After Ted fell to the floor, Painter walked unassisted to the telephone to summon aid, and then slid to the floor after hanging up the phone.

Painter's version of the shooting, corroborated by Maurice, was substantially different. She testified that Ted was "becoming abusive" during the visit and she was concerned about its effect upon Maurice, who had never fully recovered from a heart attack. Painter tried twice to pick up the telephone to call the sheriff, but Ted restrained her. The third time, Ted brought his fists down on her left shoulder; her crutch sprang out from under her left arm, and she fell backwards, striking her back on furniture. As she tried to get up, she found her left leg was "totally paralyzed," so she pulled herself up to a half–kneeling, half–standing position. Ted started toward her, and Painter pulled her gun, saying, "Stay back or I'll shoot." Ted stopped, and replied, "Go ahead and shoot." When he started toward her again, Painter shot once, aiming for his left shoulder. Ted stopped, looked down, and then looked up at her with an expression she described as, "God, I never saw anything like it. I never want to again." Ted then put his hands out toward her throat, and Painter "honestly believe[d]" he was going to kill her. She then heard her gun

going off, but she did not recall firing the next three shots. With Maurice's assistance, she made her way to the telephone to call for help.

A jury found the defendant guilty of murder in the first degree as charged under RCW 9A.32.030(1)(a), and judgment and sentence were entered June 3, 1977. Appellate proceedings as to her conviction were stayed while substituted counsel on appeal brought an omnibus motion for a new trial, which the trial court denied on May 3, 1979.

Because our decision is based primarily upon the court's instructions regarding self–defense, certain facts relevant to other issues in the appeal have been omitted.

Painter challenges the court's instructions defining self–defense and great bodily harm. Instruction No. 14 defined self–defense as:

> It is a defense to the charge of murder that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the lawful defense of the slayer when the slayer has reasonable ground to believe that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.
>
> In determining whether or not a defendant is justified in using force against another person in defense of her own person, the defendant, as a reasonably and ordinarily cautious and prudent woman, may use that force which, in the same situation, seeing what she sees and knowing what she knows, would under the circumstances have appeared reasonable to her at the time in question.

The court defined "great bodily harm" in instruction No. 15 as:

> "Great bodily harm" means an injury of a more serious nature than an ordinary striking with the hands or fists. It must be an injury of such nature as to produce severe pain and suffering.

■ Instruction No. 14, standing alone, is consistent with the "subjective" test, i.e., that a defendant's actions are to be judged against his or her own subjective impressions and not those which a detached jury might determine to be

objectively reasonable.[1] *State v. Wanrow*, 88 Wn. 2d 221, 559 P.2d 548 (1977). It includes the essential element that the person using the force need only reasonably believe, in light of all the facts and circumstances known to him or her, that he or another person is in danger. *See State v. Fischer*, 23 Wn. App. 756, 598 P.2d 742 (1979). It also conveyed the proper standard regarding the degree of force available to the defendant. As this court noted in *State v. Bailey*, 22 Wn. App. 646, 650, 591 P.2d 1212 (1979):

> Necessity must . . . be considered by the jury standing in the shoes of the defendant. The applicable standard is that persons may use that degree of force necessary to protect themselves as a reasonably prudent man or woman would use under the conditions appearing to them at the time.

*Accord, State v. Fischer, supra* at 759.

■ The effect of instruction No. 14, however, is completely undermined by the court's definition of "great bodily harm" given in instruction No. 15. By instructing the jury that "'[g]reat bodily harm' means an injury of a more serious nature than an ordinary striking with the hands or fists" the trial court not only injected an impermissible objective standard into the instructions, but, as will be discussed later, commented on the evidence.[2]

It is true that the language of instruction No. 15, or in substantially similar form, has been quoted with approval

---

[1]Instruction No. 14 is also consistent with WPIC 16.02, which provides: "It is a defense to a charge of murder that the homicide was justifiable as defined in this instruction.

"Homicide is justifiable when committed in the lawful defense of the slayer when the slayer has reasonable ground to believe that the person slain intends to inflict death or great bodily harm and there is imminent danger of such harm being accomplished.

"The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the slayer at the time." WPIC 16.02, 11 Wash. Prac. 109 (1977).

[2]We note that WPIC 2.04 defines great bodily harm as "any serious hurt or injury or a hurt or injury that is seriously painful or hard to bear." WPIC 2.04, 11 Wash. Prac. 13 (1977).

in several Washington cases. *See, e.g., State v. Lewis,* 6 Wn. App. 38, 491 P.2d 1062 (1971) (manslaughter); *State v. Bezemer,* 169 Wash. 559, 14 P.2d 460 (1932) (first degree murder); *State v. Churchill,* 52 Wash. 210, 100 P. 309 (1909) (manslaughter). *Cf. Cook v. Gisler,* 20 Wn. App. 677, 582 P.2d 550 (1978) (civil case—court referred to the holdings in *Lewis* and *Bezemer*); *State v. Milbradt,* 68 Wn.2d 684, 686, 415 P.2d 2, *cert. denied,* 385 U.S. 905, 17 L. Ed. 2d 135, 87 S. Ct. 217 (1966) (second degree murder—court upheld instruction that one cannot use a deadly weapon to repel an assault with naked hands "'unless he honestly believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm.'"). With one exception,[3] however, the criminal cases were decided before *State v. Wanrow, supra.*

Instruction No. 15 does not accurately state the law because it does not make the subjective standard of self–defense "manifestly apparent to the average juror." *State v. Fischer, supra* at 759. It is well within the realm of common experience that "an ordinary striking with the hands or fists" might inflict serious injury, depending upon the size, strength, age, and numerous other factors of the individuals involved. It is for this very reason that the jury must be instructed to interpret the evidence in each case in determining if the defendant had reasonable grounds to fear imminent danger of death or great bodily harm given his or her knowledge and the circumstances at the time of the assault. Even when the instructions are read as a whole, the error here is not cured.

██ As noted above, we are also of the opinion that the trial court's definition of great bodily harm constituted a comment on the evidence. Article 4, section 16 of our constitution prohibits a comment on the evidence if it conveys

---

[3]The one exception is *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), concerning a second degree assault conviction. There, the court was confronted with the sole issue of whether the definition of great bodily injury was a comment on the evidence, not the validity of the definition itself.

or indicates to the jury a personal opinion or view of the trial judge regarding the credibility, weight, or sufficiency of some evidence introduced at trial. *State v. Alvis,* 70 Wn.2d 969, 425 P.2d 924 (1967). The determination of a prohibited comment depends upon the facts and circumstances of each case. *State v. Owen,* 24 Wn. App. 130, 600 P.2d 625 (1979).

In *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), our Supreme Court considered whether a definition of "great bodily injury," substantially similar to the definition of "great bodily harm" used here, was a comment on the evidence.[4] In *Foster,* the defendant panicked when he thought he saw the victim reaching inside his coat for a gun, whereupon he pulled out his own gun and began shooting wildly. He relied on self–defense, but his conviction of second degree assault was affirmed. Unlike the present case, however, *Foster* did not concern a striking with hands or fists. Thus, it is not surprising that the *Foster* court simply stated:

> This same language has been viewed as an accurate statement of the law in other cases. *See State v. Bezemer,* 169 Wash. 559, 14 P.2d 460 (1932); *State v. Lewis,* 6 Wn. App. 38, 491 P.2d 1062 (1971). Accordingly, we do not view this instruction as one which conveys the court's attitude toward the merits of this particular case.

*State v. Foster, supra* at 481–82.

In this case, the *only* evidence by which the jury could find a justifiable homicide was a threatened striking with hands or fists. By restricting the definition of great bodily harm as it did, the trial court clearly indicated to the jury that the evidence presented at trial was insufficient to support the theory of self–defense. Under the facts and circumstances of this case, instruction No. 15 constituted an impermissible comment on the evidence which was prejudicial to the defendant.

---

[4]The definition challenged in *Foster* stated: "'Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.'" *State v. Foster, supra* at 481.

In response to defendant's assignment of error regarding instruction No. 15, the State has contended only that no exception was raised at trial and, thus, appellate review is not available. Defendant's failure to except to an instruction containing a comment on the evidence prejudicial to her defense does not foreclose her from raising this issue on appeal. *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968). If an erroneous instruction goes to the essence of an accused's defense, the error may so deprive a criminal defendant of due process of law that manifest justice requires the matter to be remanded for a new trial, even if counsel did not except below. *State v. Crigler,* 23 Wn. App. 716, 598 P.2d 739 (1979). We believe that the instruction given by the trial court deprived the defendant of due process of law, and thus the issue is properly before us.

Defendant's other assignments of error need not be discussed in view of our decision on the court's instructions.

Reversed and remanded for a new trial.

JAMES, A.C.J., and ANDERSEN, J., concur.

Reconsideration denied January 7, 1981.

Review denied by Supreme Court February 27, 1981.