**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mark SCHIMETZ, Defendant and Appellant.**

Cr. No. 856.

Supreme Court of North Dakota.

Dec. 30, 1982.

Dennis L. Molenaar, Asst. State's Atty., Grand Forks, and Senior Law Student Phil Harmeson, for plaintiff and appellee; argued by Dennis L. Molenaar, Asst. States Atty., and Phil Harmeson, Grand Forks.

O'Grady, Morley & Morley, Grand Forks, for defendant and appellant; argued by Michael J. Morley, Grand Forks.

SAND, Justice.

The defendant, Mark Schimetz, was charged with and found guilty by a jury of aggravated assault, a violation of North Dakota Century Code § 12.1–17–02(1).[1] The defendant moved for a new trial. The motion was denied and he appealed from the order denying his motion for a new trial and from the judgment.

On 13 December 1981 the defendant, his girlfriend, Jennifer Saure (Saure) and her sister, Janine Baier (Baier), attended a private party at a house rented by Paul Breidenbach a few miles west of Grand Forks, North Dakota. Prior to attending the party, Schimetz had consumed several beers at bars in Grand Forks, North Dakota. Schimetz and Saure arrived at the party after 1:00 a.m. in the defendant's car. The record reflects that Saure drove Schimetz' car at least part of the way to the party because Schimetz was under the influence of alcohol. Baier drove her own car to the party, and they arrived at approximately the same time. Their cars were parked next to each other a short distance from the house in a poorly lit area. Schimetz testified the lights on his car were shut off when the group went in to the party. Schimetz, Saure, and Baier stayed at the party approximately one hour, and during that time Schimetz consumed more beer.

Schimetz testified as follows concerning the events leading up to and including an

---

1. NDCC § 12.1–17–02(1) provides as follows: "A person is guilty of a class C felony if he:

1. Willfully causes serious bodily injury to another human being."

incident at his car: that upon leaving the party and walking to his car, he observed the left turn signal on his car blinking; that he observed the lights on inside his car; that when he got to his car, he saw a person he did not recognize inside his car holding what appeared to be a keyring; that he thought the person was stealing his car; that he told the person, Myron Scott, to get out of his car; that Scott did not respond and continued to "work a key into the ignition;" that he grabbed Scott in an attempt to remove him from his car; that the attempt was to no avail and he drew a knife to "scare the person out;" that he then grabbed Scott to try to pull him from the car; that Scott agreed to get out of the car; that he backed away and put his knife away; that after Scott got out of the car a brief struggle between himself and Scott ensued; that Scott returned to the party and he went home; and that he could not recall when or if Scott may have gotten cut.

Scott testified, in substance, that he was intoxicated and could not recall the events or circumstances of the incident with Schimetz. Scott did remember that he returned to the party and people informed him that he had been stabbed, and that he was subsequently treated for a stab wound.

Baier testified on direct examination at trial that during the incident Schimetz told Scott that "I could have cut you more or I should have cut you more." However, Baier also testified on cross-examination that it was possible that she heard Schimetz tell Scott "I should have cut you." Baier testified that after Scott got out of the car he was not trying to fight, but was trying to get away. Baier also testified as a rebuttal witness for the prosecution that Sauer told her (Baier) that Schimetz washed the knife off and that Schimetz "admitted to her [Saure] that he was sorry for it but it wasn't a killing stab."

Saure was called as a witness for Schimetz and testified on cross-examination that Schimetz was yelling at Scott and she pleaded with Schimetz to stop striking Scott; and that Scott did not swing at or hit Schimetz, but that Schimetz continued to grab and kick Scott. Saure also testified as follows as a rebuttal witness for Schimetz:

"Q Were you present then when Janine testified that you had said that Mark had washed off the knife?

"A Yes, I was.

"Q And did you, in fact, say that to Jennifer?

"A No. What I had said was when we came back into the house the next day the knife was laying on the table and we looked at it and we saw that there wasn't any blood on it. I think that's where she got that I said that he could have washed it off, you know.

"Q But you never—

"A I never said that he did wash it because I did not know that.

"Q Were you also present then when Janine testified that Mark admitted to you that he stabbed Myron Scott and that it was not a killing stab, did you hear that testimony, hear her testimony about that?

"A Yes, I did.

"Q Did Mark, in fact, say that to you?

"A No, he never said that he stabbed him. He said that yes, it was possible that Myron could have been cut while he was trying to pull him out of the car and he had the knife in his hand but he never exactly said that he stabbed him. He was trying to get him out and that it could have happened.

"Q Did he ever admit to you that he jabbed him or stuck him?

"A He said he didn't make a killing stabbing motion with the knife.

"Q So Mark never made the admission that Janine has just said?

"A No, he said it was possible."

The testimony at trial established that, several days after the incident at the party, a phone call was made by Schimetz to Scott. Scott testified on direct examination that during the phone call Schimetz stated, "I'm sorry I stabbed you. I thought it was a college kid. If I would have known it was you, I wouldn't have done it." On cross-ex-

amination Scott testified as follows concerning the phone conversation:

"Q It's true, isn't it, that he also told you that he called you because he had been told by John Schumer that he had stabbed you?

"A Yes.

"Q So Mark indicated to you that someone else had told him that he had stabbed you, right?

"A Yes.

"Q And he also told you in this conversation, did he not, that Mr. Schumer told Mark that he should call you and apologize, correct?

"A Yes.

"Q And he did, in fact, apologize to you?

"A That's why he said he was calling."

Schimetz testified that he made the phone call but denied the admission. Schimetz testified that he made the phone call because other people were accusing him of stabbing Scott and that another person told him he should call Scott and apologize. Schimetz denied willfully stabbing Scott and, in essence, testified that the stabbing was accidental.

A knife was seized from Schimetz when he was arrested. The State Laboratory conducted tests on the knife which established that traces of human blood were on the knife. However, the amount of blood on the knife was not sufficient to establish the type of human blood.

After the jury returned a verdict of guilty, the defendant moved for a new trial pursuant to Rule 33, North Dakota Rules of Criminal Procedure, and asserted as grounds for a new trial, among other things, that the evidence was insufficient[2] to support a conviction for aggravated assault; that the court erred in refusing to give certain jury instructions requested by the defendant; and that the court improperly admitted into evidence hearsay testimony and lay opinion testimony. The court denied the defendant's motion and he appealed from the order denying his motion for a new trial and from the judgment of conviction.

Generally, the trial court is clothed with wide discretion in ruling on a motion for a new trial based on insufficiency of the evidence and the determination of the court will not be disturbed unless there is an abuse of that discretion. *State v. Olmstead*, 261 N.W.2d 880 (N.D.1978), *cert. denied* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). We have defined an abuse of discretion as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Dobervich v. Central Cass Public School District No. 17*, 302 N.W.2d 745 (N.D.1981); *In Interest of F.H.*, 283 N.W.2d 202 (N.D.1979). The motion for a new trial was based primarily upon the same issues presented on appeal from the judgment and we will discuss and treat them as being the same.

The first issue we will consider is whether or not the evidence was sufficient to support the jury verdict. The defendant pointed out that none of the State's witnesses saw the actual stabbing or knew exactly what happened. However, this does not alter the undeniable fact that Scott received a stab wound in his back. It is also uncontroverted that an incident occurred between Schimetz and Scott and a struggle ensued; that Schimetz drew a knife during the incident; and that tests conducted by the State Laboratory after the incident established that traces of human blood were on the knife.

■ Circumstantial evidence alone may be sufficient to find a person guilty of the crime charged. *State v. McMorrow*, 286 N.W.2d 284 (N.D.1979). Our role in cases involving circumstantial evidence is to review the record to determine if competent evidence was presented from which the jury

---

2. In criminal cases a different principle of law applies to insufficiency of evidence as compared to weight of evidence. A review of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Tibbs v. Florida*, —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), will shed some light on this.

could have drawn a justifiable inference reasonably tending to prove guilt and fairly warranting a conviction. *State v. Allen,* 237 N.W.2d 154 (N.D.1975).

■ Although we recognize that no evidence was introduced that anyone saw the actual stabbing, we believe there was sufficient circumstantial evidence presented to warrant a finding of guilt by the jury. We are aware that conflicting testimony existed concerning the incident and statements made during and after the incident. The jury has the duty and responsibility to weigh and determine the conflicting evidence. *State v. Olmstead, supra.* Without weighing the evidence, we conclude that the evidence presented at trial was sufficient to warrant and sustain a conviction as a matter of law of the crime of aggravated assault.

The next issue raised by Schimetz is that the trial court committed prejudicial and reversible error in denying certain jury instructions requested by him.

Schimetz contended that because the trial court's instruction on the essential elements of aggravated assault required the jury to find the lack of a justification *or excuse* for the conduct in order to convict him, the trial court erred when it failed to give his requested instruction defining "excuse."[3] Schimetz contended that, pursuant to the statutory definition of excuse requested by him, he was absolved from criminal liability if he believed his conduct necessary, even though mistaken in that belief, and the belief was reasonable. The conduct which Schimetz contended entitled him to an instruction on excuse was rooted in the theory of the use of force in defense of property. Schimetz further pointed out the defense of property instruction given by the trial court made no allowance for, and had

nothing at all to do with, a mistaken belief. The basic premise of Schimetz' argument is that he believed the circumstances existing at the scene of the incident made his conduct necessary and appropriate. We disagree.

■ A defendant is entitled to a particular instruction on a valid applicable theory of a case if there is some evidence to support the theory. *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982); *State v. Gann,* 244 N.W.2d 746 (N.D.1976). If jury instructions, when considered as a whole, correctly and adequately advise the jury of the law, it is sufficient although part of the instruction, standing alone, is insufficient or erroneous. *State v. Skjonsby, supra; State v. Reich,* 298 N.W.2d 468 (N.D.1980). Jury instructions, out of necessity, are an explanation and application of the law as it relates to the evidence presented. This, of course, includes the determination and evaluation by the jury of the evidence, disputed or otherwise. However, if no evidence is presented regarding the application of a certain principle of law, or if no legal basis requires it, the need for a jury instruction on either principle does not exist. An instruction on either of these principles, if not warranted or required, may only tend to confuse.

■ In the instant case we do not believe evidence, as outlined earlier herein, was presented to make applicable the principles of law regarding excuse. The defendant in substance denied, rather than admitted, stabbing Scott. He testified that if Scott was cut by him at all, "it was accidental." Schimetz further testified that he thought Scott was putting the key in the ignition switch and was stealing his car. Nothing in the record establishes that Scott was proceeding in a violent or dangerous manner.

---

**3.** The requested instruction tracks the language of NDCC § 12.1–05–08 and provides as follows:

"A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is

negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative defense according to which type of defense would be established had the facts been as the person believed them to be."

■ The trial court gave instructions on the use of force in defense of property and on limits on the use of force.[4] The failure of the trial court to give the requested instruction on excuse must be considered in conjunction with the instructions given on the limits on the use of force, and in particular deadly force, in defending property and the testimony contained in the record.

Section 12.1–05–07(2)(b), NDCC, provides, in part, as follows:

"2. Deadly force is justified in the following instances:

b. When used in lawful self-defense, or in lawful defense of others, if such force is necessary to protect the actor or anyone else against death, serious bodily injury, or the commission of a felony involving violence. The use of deadly force is not justified if it can be avoided, with safety to the actor and others, by retreat or other conduct involving minimal interference with the freedom of the person menaced."

In this instance, no evidence was presented to establish that the force used by Schimetz was necessary to protect himself or anyone else against death, serious bodily injury, or the commission of a felony involving violence. Neither was there evidence presented to establish that Schimetz had a mistaken belief that the force used by him was necessary to protect himself or anyone else against death, serious bodily injury, or the commission of a felony involving violence. Nothing in the record reflects that Scott was conducting himself in a manner so as to make an instruction on excuse appropriate.

Based upon the evidence presented in this case, we believe these instructions given by the trial court correctly and adequately advised the jury on the law relative to the altercation between Schimetz and Scott. We also agree with the trial court that if the instruction had been given, it would only have confused the jury because no evidence was submitted on this matter from which the jury could have inferred that excuse was a factor. We therefore conclude that the court did not err by refusing to give the requested instruction on excuse.

Schimetz also contended that the trial court erred in refusing to instruct the jury on specific culpability with regard to the injury caused.

■ Schimetz contended that the following part of the court's instruction on the elements of aggravated assault was objectionable:

"(2) That the Defendant, Mark Schimetz, while committing said Aggravated Assault upon said Myron Scott caused serious bodily injury to his person."

Schimetz, in substance, asserted that the jury was not instructed that he must also possess the required culpability of acting willfully in regard to the infliction of serious bodily injury. Thus, Schimetz asserted that the jury was not instructed on the culpability requirement with respect to the result of the conduct even though NDCC § 12.1–02–02(3)(a) and (b)[5] mandated such an instruction.

4. These instructions essentially track the language of NDCC §§ 12.1–05–06 and 12.1–05–07 and provide as follows:

"Use of force in defense of premises and property. Force is justified if it is used to prevent or terminate an unlawful entry or other trespass in or upon premises, or to prevent an unlawful carrying away or damaging of property, if the person using such force first *requests the person against whom* such force is to be used to desist from his interference with the premises or property, except that a request is not necessary if it would be useless or dangerous to make the request or substantial damage would be done to the property sought to be protected before the request could effectively be made.

". . . Limits on the use of force—Excessive force—Deadly force.

"1. A person is not justified in using more force than is necessary and appropriate under the circumstances.

(b). * * * The use of deadly force is not justified if it can be avoided, with safety to the actor and others, by retreat or other conduct involving minimal interference with the freedom of the person menaced. * * *"

5. Section 12.1–02–02(3)(a) and (b) provide as follows:

"3. a. Except as otherwise expressly provided, where culpability is required, that kind

As we have previously noted, jury instructions must be considered as a whole and if, so considered, they correctly and adequately advise the jury of the law, they are sufficient although part of the instruction, standing alone, may be insufficient or erroneous. *State v. Skjonsby, supra; State v. Reich, supra.* In this instance the instructions given by the trial court to the jury included an instruction tracking the statutory language of the aggravated assault statute, NDCC § 12.1–17–02, which provided, in substance, that a person is guilty of a class C felony if he willfully causes serious bodily injury to another human being.

Although the specific part of the instruction objected to by Schimetz may, by itself, have been erroneous, we believe the instructions, when considered as a whole, as they must be, and in particular the instruction tracking the statutory language of aggravated assault correctly and adequately advised the jury that aggravated assault, involved willfully causing serious bodily injury to another. Additionally, the trial court defined the term "willfully" in its instructions to the jury. We believe the instructions given by the trial court to the jury, when viewed as a whole, adequately covered all the principles of law involved in the factual circumstances presented by this case.

Schimetz also contended that the trial court erred in admitting into evidence certain hearsay evidence. Deputy Sheriff Gary Grove testified at trial that, during the course of his investigation, he was told by the host of the party, Paul Breidenbach, that Scott had been "stabbed." This testimony was objected to by Schimetz as violating the hearsay rule. The trial court, in response to the objection, noted that Breidenbach had been subpoenaed and would be available for cross-examination and actually did testify and was thus subject to cross-examination. On appeal to this Court, Schimetz contended that the line of questioning violated the hearsay rule, was prejudicial, lacked foundation, and denied him the right to confront the person making the statements.

Prior to the adoption of the North Dakota Rules of Evidence, this Court in *Leake v. Hagert,* 175 N.W.2d 675, 683 (N.D.1970), stated the rule of law as follows:

"The hearsay rule prohibits use of a person's assertion, as equivalent to testimony of the fact asserted, unless the asserter is brought to testify in court on the stand, where he may be probed and cross-examined as to the grounds of his assertion and his qualications to make it."

Since then, North Dakota has adopted the Rules of Evidence and they were in effect at the trial in the instant case.

Rule 801(c), NDREv, provides that hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

We do not believe the statement by Breidenbach to Grove was offered to establish that Scott was stabbed, but was offered to establish and explain the deputy sheriff's presence and investigation of the accident.[6]

Furthermore, we do not believe the confrontation clause was violated in this case.

Vol. 4 Weinstein and Berger, Weinstein's Evidence, ¶ 800[04], page 18, notes that the hearsay rule often has a very different im-

---

of culpability is required with respect to every element of the conduct and to those attendant circumstances specified in the definition of the offense, except that where the required culpability is 'intentionally', the culpability required as to an attendant circumstance is 'knowingly'.
b. Except as otherwise expressly provided, if conduct is an offense if it causes a particular result, the required degree of culpability is required with respect to the result."

6. Although there was an issue as to whether or not Schimetz stabbed Scott, the question objected to by Schimetz referred to Breidenbach telling Grove that Scott had been stabbed. The evidence in the record was overwhelming that Scott had been stabbed. Consequently, even if Grove's testimony concerning Breidenbach's statement was hearsay, any error in admitting the testimony was not prejudicial.

pact on civil cases than in criminal cases when the statement is offered against an accused, and that in a criminal case the confrontation clause of the Sixth Amendment comes into operation.

"Taken literally this clause could mean that no evidence falling within a hearsay exception may be admitted against an accused unless the declarant is available to testify, 'enabling the trier to observe his demeanor as an aid in evaluating his credibility and making false accusations more unlikely because of the presence of the accused and the solemnity of the occasion.'" *Id.* at 18–19.

*Weinstein's Evidence, supra,* relying upon *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), stated: "If the declarant is present at trial, under oath, and subject to effective cross-examination about his extra-judicial statements ... the confrontation clause is satisfied."

In this case the witness (Breidenbach) who made the statement to the sheriff testified and was available for cross-examination regarding the statement he made to the sheriff. We, therefore, conclude that the rule and purpose of the confrontation clause has been satisfied and that the claim of error by Schimetz in this instance is without merit.

As to the assertion that the testimony of a lay witness was improperly permitted or received regarding the seriousness of the wound, we are not persuaded. The lay witness merely expressed his views that the wound was more than a scratch and seemed serious enough to him to require medical attention. Any reasonable person with common sense is capable of expressing a view on such matters without first having to be qualified or treated as an expert witness. The testimony was not a legal or medical conclusion. It was a matter upon which any reasonable person could express his or her thoughts. The contention of the defendant in this respect is without merit.

Accordingly, the judgment of conviction is in all matters affirmed.

ERICKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.