**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gerald D. BIBY, Defendant and Appellant.**

**Cr. No. 1040.**

Supreme Court of North Dakota.

April 17, 1985.

Gail Hagerty, State's Atty., Bismarck, for plaintiff and appellee.

Vinje Law Firm, Bismarck, for defendant and appellant; argued by Richard G. Carver.

GIERKE, Justice.

Gerald D. Biby appeals from a criminal judgment entered on a jury verdict finding him guilty of two counts of theft by deception. We affirm.

On March 20, 1979, Biby sent letters to Dr. Raymond Gruby and Dr. Ralph Kilzer stating that an opportunity existed for three more partners in a real estate development program established for the ownership of "Airport Industrial Park, Fourth Addition" in Bismarck. The letters stated that the purchase price of the property, which consisted of approximately 18.8 acres, was "$475,000 ($200,000 down-payment)," and that the partnership agreement was structured so that Biby would act as managing partner. The actual purchase price of the property was $375,000 with a $100,000 down payment.

After the doctors showed an interest in the development project, Biby wrote another letter stating that he had reserved for each of them a 10 percent interest for $20,000. Eventually, Gruby invested in the project and Kilzer invested on behalf of his pension and profit sharing plan. The partnership was named Wayne Industrial Associates.

During December 1979, Gruby and Kilzer received letters from Biby stating that the December 1, 1979 annual payment was due on the property. Gruby made the payment and Kilzer had a check for the payment drawn on the account of the "Bismarck Orthopaedic Associates, P.C. Pension and Profit Sharing Plan." On February 8, 1980, Biby was served with a notice of foreclosure on the airport industrial park property. During the ensuing months, Biby was also served with a summons and complaint in the foreclosure action, a sheriff's notice of levy, and a judgment of foreclosure and special execution. A sheriff's sale was held on July 15, 1980, and the property was sold to Keith Olson, the plaintiff in the foreclosure action. Olson received a sheriff's deed to the property in August 1981.

During late 1980, Biby wrote letters to Gruby and Kilzer which stated in part: "December 1, 1980, another annual installment on our 18+ acres of Industrial Land is Due." In response, Gruby wrote a $4,730 check to Wayne Industrial Associates and Kilzer wrote to the First Trust Company requesting that a $4,730 check be drawn on the pension and profit sharing plan account for the payment. Both doctors testified that they had no knowledge that the property had been foreclosed and sold in a sheriff's sale. They further testified that had they known of the foreclosure and sheriff's sale, they would not have made the 1980 payments.

Biby was charged with two counts of theft of property under § 12.1-23-02(2), N.D.C.C., in connection with the 1980 payments he received from Gruby and from Kilzer's pension and profit sharing plan. Biby testified at trial that, with the doctors'

consent, he used the money to pay partnership expenses incurred in marketing the property. The jury convicted Biby on both counts.

I

Biby initially contends that the trial court should have granted his pretrial motion to dismiss the charges because the criminal complaint was issued without probable cause.

Following a probable cause hearing on October 25, 1983, the county court judge signed the criminal complaint. The county court held a preliminary hearing on November 9, 1983, after which Biby was bound over, an information was filed, and Biby was arraigned. On February 8, 1984, Biby filed the motion to dismiss the charges alleging that the original criminal complaint had been issued without probable cause. Biby did not seek suppression of any physical evidence obtained or verbal statements made as a result of his arrest.

We need not determine whether probable cause existed for issuance of the criminal complaint, because even if it did not exist, "an illegal arrest is not grounds for dismissing a complaint or precluding trial of a defendant. Nor will an illegal arrest void a subsequent conviction." *State v. Mees*, 272 N.W.2d 284, 287 (N.D. 1978). *See also Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *City of Wahpeton v. Johnson*, 303 N.W.2d 565 (N.D.1981); *State v. Hager*, 271 N.W.2d 476 (N.D.1978). Biby's claim, at this point in the proceedings, that the charges should have been dismissed because the complaint was issued without probable cause is without merit.

II

Biby asserts that the trial court erred in refusing to strike certain material from a state's exhibit. The exhibit in question consisted of the pleadings and other documents in Keith Olson's foreclosure action against Biby and Wayne Industrial Associates, which included allegations that Biby

did not make the 1979 annual payment on the property. Biby asserts that because the three-year statute of limitations [§ 29–04–02, N.D.C.C.] had passed with regard to any 1979 transactions, evidence that he failed to make the 1979 annual payment was "highly prejudicial and irrelevant."

■ Evidence of prior acts or crimes is generally not admissible unless it is substantially relevant for some purpose other than to point out the defendant's criminal character and thus to show the probability that he acted in conformity therewith. *State v. Stevens*, 238 N.W.2d 251 (N.D. 1975); Rule 404(b), N.D.R.Ev. However, evidence of other acts or offenses may be admissible when "the evidence provides a more complete story of the crime by putting it in context of happenings near in time and place; ..." *State v. Frye*, 245 N.W.2d 878, 883 (N.D.1976). *See also State v. Ruble*, 77 N.D. 79, 40 N.W.2d 794 (1950).

■ The foreclosure action was an important underlying element of this case and we believe it was proper for the court to allow evidence of the course of events leading to the foreclosure. In any event, prior to the introduction of the state's exhibit, Alice Olson, the widow of the plaintiff in the foreclosure action, had testified without objection that the annual payment due on the property in 1979 had not been made. Thus, the jury was already aware of Biby's failure to make the 1979 payment and the introduction of the state's exhibit was merely cumulative in this respect. *See State v. Skjonsby*, 319 N.W.2d 764, 792 (N.D.1982). We conclude that the trial court did not abuse its discretion in refusing to strike the allegations of nonpayment in the state's exhibit.

### III

Biby asserts that the trial court erred in not permitting Dan Anderson, the clinic administrator for Bismarck Orthopaedic Associates, P.C., to be questioned regarding whether Kilzer violated the terms of his pension and profit sharing plan by using its funds for investment in the proper-

ty. Biby claims that testimony on whether the pension and profit sharing plan was being operated properly was relevant evidence entitled to be considered by the jury and, in the alternative, that it was necessary to impeach Kilzer.

■ Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, N.D. R.Ev. The determination of whether evidence is too remote to be relevant is left to the discretion of the trial court, and its decision will not be reversed in the absence of clear proof of an abuse of that discretion. *State v. Buckley*, 325 N.W.2d 169 (N.D.1982); *State v. Moe*, 151 N.W.2d 310 (N.D.1967); *State v. Glavkee*, 138 N.W.2d 663 (N.D.1965).

■ In this instance we do not believe the trial court abused its discretion in refusing to allow the line of questioning proposed by Biby. Biby was charged with obtaining payments from Gruby and Kilzer's pension and profit sharing plan by falsely indicating to Gruby and Kilzer respectively that those funds would be used for the 1980 annual payment on the real estate. The record contains a check for the payment drawn on the account of Kilzer's pension and profit sharing plan. Whether Kilzer had the authority to make such an investment on behalf of the plan was not "of consequence to the determination of the action ...." Rule 401, N.D.R.Ev.

■ We also conclude that the trial court did not abuse its discretion in refusing to allow the line of questioning for purposes of impeaching Kilzer. Anderson was called as a witness by the defense after Kilzer had testified on behalf of the prosecution. Biby has provided us with no authority which would allow admission of the evidence for impeachment purposes under the procedural circumstances of this case.

Rule 608(b), N.D.R.Ev., provides:

*"(b) Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

■ The principal concern of subdivision (2) of this rule is "to prohibit impeachment of a witness through extrinsic evidence of his bad acts when this evidence is to be introduced by calling *other* witnesses to testify." *Carter v. Hewitt,* 617 F.2d 961, 969 (3d Cir.1980) [Emphasis in original.]. Impeachment by extrinsic evidence threatens to expand the trial into collateral matters which could distract and confuse the jury. *United States v. May,* 727 F.2d 764 (8th Cir.1984). Thus, the rules of evidence carefully limit methods of impeachment and vest the trial judge with considerable discretion over the matter. *See State v. Hilsman,* 333 N.W.2d 411 (N.D.1983).

Under Rule 608(b)(2), N.D.R.Ev., Anderson, in the trial court's discretion, could have been cross-examined by the defense concerning specific instances of Kilzer's conduct only if Anderson had testified on direct examination as to Kilzer's character for truthfulness or untruthfulness. The trial court properly disallowed the defense's attempt in this case to impeach Kilzer through Anderson's direct examination testimony regarding specific instances of Kilzer's conduct.

### IV

■ Biby contends that the trial court erred in refusing to permit him the use of demonstrative evidence. The demonstrative evidence consisted of charts upon which items of correspondence between Biby and the doctors were affixed. The items were eventually entered into evidence individually.

■ The admissibility of demonstrative evidence is left to the discretion of the trial court, and its decision to admit or exclude the evidence will not be interfered with on appeal unless the court is shown to have abused its discretion. *State v. Hartsoch,* 329 N.W.2d 367 (N.D.1983); *State v. Berger,* 285 N.W.2d 533 (N.D.1979); *State v. Lange,* 255 N.W.2d 59 (N.D.1977). We are satisfied that the trial court did not abuse its discretion in this instance.

### V

■ Biby contends that the trial court erred in denying his proposed jury instructions concerning the ·"nature of partner's liability," the "presumption of control over property," and the nature of a partnership.[1] The trial court essentially ruled that the proposed instructions were inapplicable to the issues in the case and would only tend to confuse the jury. We agree.

---

1. The proposed instruction on the "nature of partner's liability" is based on § 45–06–07, N.D.C.C., and states:

"All partners are liable jointly and severally for everything chargeable to the partnership under sections 45–06–05 and 45–06–06. Additionally, all partners are liable jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

The proposed instruction on the "presumption of control over property" is based on *Pennoyer v. Neff,* 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877), and states:

"The law assumes that property is always in the possession of it's [sic] owner and proceeds upon the theory that it's [sic] seizure will inform him not only that it is taken into the custody of the authorities, but that he must look into any proceedings regarding the property that are authorized by law is thus put on notice as to all proceedings regarding his property."

The record reflects that Biby did not submit a proposed instruction on the nature of a partnership.

 Although a defendant is entitled to an instruction based on a legal defense if there is evidence to support it, a trial court may properly refuse to submit an inapplicable or irrelevant instruction to the jury. *State v. Schimetz,* 328 N.W.2d 808 (N.D. 1982); *State v. Marinucci,* 321 N.W.2d 462 (N.D.1982); *State v. Granrud,* 301 N.W.2d 398 (N.D.), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981); *State v. Sheldon,* 301 N.W.2d 604 (N.D.1980), *cert. denied,* 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 204 (1981).

The issue for the jury's determination in this case was whether Biby knowingly obtained money from Gruby and Kilzer's pension and profit sharing plan by falsely indicating that those funds would be used for the 1980 annual payment on the real estate with the intent to deprive the owners of those funds. Given the nature of the criminal charges and the facts developed at trial, whether the partners were jointly liable for partnership debts and obligations or whether Gruby and Kilzer's pension and profit sharing plan should have known of the foreclosure action and sheriff's sale are neither legal defenses nor relevant to the issue of Biby's guilt or innocence in this case. *See generally State v. Hastings,* 77 N.D. 146, 153, 41 N.W.2d 305, 309 (1950); *State v. Stewart,* 9 N.D. 409, 414–416, 83 N.W. 869, 870–871 (1900). We conclude that the trial court did not err in refusing to give the instructions requested by Biby.

 Biby has not claimed that the instructions that were given by the trial court are erroneous, but only that they are incomplete. This court has held that "[n]ondirection is not prejudicial error unless it amounts to misdirection." *State v. Joern,* 249 N.W.2d 921, 923 (N.D.1977). We have reviewed the instructions given to the jury in this case and find no misdirection, and therefore no error.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.