STATE of North Dakota, Plaintiff
and Appellee,

v.

Mark THIEL, Defendant and Appellant.

Crim. No. 1212.

Supreme Court of North Dakota.

July 28, 1987.

Bruce B. Haskell, Asst. States Atty., Mandan, for plaintiff and appellee.

Webster, Engel & Lee, Bismarck, for defendant and appellant; argued by Austin G. Engel, Jr., Bismarck.

ERICKSTAD, Chief Justice.

Mark Thiel appeals from a criminal judgment entered upon a jury verdict finding him guilty of simple assault in violation of § 12.1–17–01, N.D.C.C. We reverse and remand for a new trial.

The evidence, viewed in the light most favorable to the verdict, reveals that in the early morning hours of December 7, 1985, approximately fifteen to twenty people attended a post-wedding dance party at a motel room in New Salem. At 4 a.m., two of the party guests began fighting in the room. Duane Senger, who was not involved in the initial altercation, told the two men who were fighting that " 'if you want to fight you guys take it outside.' " Thiel, who also was not involved in the initial altercation, then approached Senger and told him " 'they don't have to, they can fight right here.' " Senger again asked that they leave the room. Thiel then grabbed Senger's shirt and Senger caught Thiel's wrists to avoid being struck. Thiel pushed Senger away and struck him, knocking him down. As Senger attempted to get up, Thiel struck him again, breaking his nose. Senger received emergency medical treatment the same morning.

Thiel was sentenced to serve 30 days in the Morton County jail and was ordered to pay $1,573 in restitution to cover Senger's medical expenses.

On appeal, Thiel asserts that the trial court committed reversible error in refusing to give his requested jury instructions on self-defense and defense of others. We agree.

A defendant is entitled to an instruction based on a legal defense if there is evidence to support it. *E.g., State v. Biby*, 366 N.W.2d 460, 465 (N.D.1985); *State v. Schimetz*, 328 N.W.2d 808, 812 (N.D.1982); *State v. Gann*, 244 N.W.2d 746, 753 (N.D.1976). Self-defense and defense of others are classified as "defenses" rather than "affirmative defenses." *See* §§ 12.1–05–01, 12.1–05–03, and 12.1–05–04, N.D.C.C.; *State v. White*, 390 N.W.2d 43, 45 n. 1 (N.D.1986). A "defense" is raised when there is evidence in the case "sufficient to raise a reasonable doubt on the issue." § 12.1–01–03(2)(b), N.D.C.C.; *see also State v. Leidholm*, 334 N.W.2d 811, 823 (N.D.1983); I Working Papers of the National Commission on the Reform of Federal Criminal Laws, at pp. 15 and 16 (1970). Thus, Thiel was entitled to his requested instructions if there was evidence sufficient to raise a reasonable doubt on whether he was justified in using force upon another person to defend himself against danger of imminent unlawful bodily injury [§ 12.1–05–03, N.D.C.C.], or whether he was justified in using force upon another person in order to defend anyone else and the person defended would be justified in defending himself [§ 12.1–05–04, N.D.C.C.]. In determining on appeal whether the jury should have been charged on a particular defense, we must view the evidence in the light most favorable to the defendant. *E.g., United States v. Benavidez*, 558 F.2d 308, 309 (5th Cir. 1977); *State v. Farmer*, 212 Kan. 163, 510 P.2d 180, 182 (1973); *People v. Moye*, 66 N.Y.2d 887, 498 N.Y.S.2d 767, 489 N.E.2d 736, 738 (1985).

Viewed in the light most favorable to the defendant, the evidence presented by defense witnesses reflects that Thiel became involved in a melee while attempting to rescue a friend, Jeff Moltzen, from a fight. According to Thiel, when he entered the motel room, he saw Moltzen "getting beat up" by "at least three" people. Thiel testified that when he "tried to rescue Jeff by just pulling people off the top of him," he was "hit from the side" and was "pushed almost the whole length of the room up

against the other side." Thiel stated that "people were swinging ... pushing and yelling and jumping on top of me and telling me to get out." Moltzen testified that when Thiel tried to get him out of the room, "everybody was pushing and shoving and swinging ... [p]ushing and swinging at both of us...." Another defense witness testified that "[t]hey just started beating up on Jeff, and Mark just jumped in to stop it ... Mark was trying to get Jeff away from them guys, then they were jumping on Mark."

■ The trial court refused to instruct on self-defense and defense of others because "[n]one of the defendant's witnesses furnished any evidence that Mr. Senger in any way hit or assaulted Mark Thiel [or] ... Jeff Moltzen." While the defense witnesses were unable to identify Senger and his precise role in the incident, we believe that under the circumstances the trial court required too much by insisting on direct evidence that Senger attacked Thiel or Moltzen. It is apparent from the evidence that the people involved were not acquainted with each other. Moltzen testified that "everybody" was pushing, shoving, and swinging. Given the number of people involved and the inherent confusion, it is reasonable to infer from the defendant's evidence that Senger was one of the people either fighting with Moltzen or pushing and jumping on Thiel.

■ Relying on *State v. Schimetz,* 328 N.W.2d 808 (N.D.1982), the state asserts that Thiel was not entitled to the instructions because he refused to unequivocally admit striking Senger. In *Schimetz, supra,* 328 N.W.2d at 812–813, this court held that the trial court did not err in refusing to give an instruction on excuse where, among other things, the defendant denied stabbing the victim, the defendant testified that if he did it was "accidental," and the record did not establish that the victim was proceeding in a violent or dangerous manner. In the present case, Thiel testified as follows:

"Q [By Mr. Haskell] Now, did you ever see Duane Senger try to hit you?

"A [By the Defendant] I have no idea what Duane Senger looked like before today.

"Q That's not my question. Did you see him try to hit you?

"A No.

"Q Did you see him try to hit anybody else?

"A No.

"Q But, you just walked up to him and popped him one?

"A No.

"Q You never hit him?

"A No."

Thiel further testified:

"Q [By Mr. Engel] Did you hit anyone in the jaw or nose with your fist?

"A [By the Defendant] No, that was in front of me. If, on the back or something when I threw my arms back or something to get them off my back I could have."

We reject the State's contention for two reasons. First, in *Schimetz* we noted that nothing in the record established that the victim was proceeding in a violent or dangerous manner, one of the elements necessary to establish the defense. As we noted above, it is reasonable to infer from the evidence that Senger was one of the persons either fighting with Moltzen or jumping on Thiel. In addition, *Schimetz* did not involve a brawl among strangers. Thiel's testimony that he did not hit Senger while he was standing in front of him is not inconsistent with his theory that he may have hit Senger while trying to rescue Moltzen from a fight or to protect himself while doing so. Furthermore, a defense witness at one point testified that Thiel either hit Senger or "kind of pushed him out of the way" while Thiel was trying to help Moltzen.

Second, although it might also be inferred from Thiel's testimony that the blow was accidental, this court long ago adopted the "well-established rule in criminal jurisprudence that a defendant is entitled to have submitted to the jury, with proper instructions, all defenses of which there is any support in the evidence, whether such defenses are consistent or inconsistent."

*State v. Hazlett*, 16 N.D. 426, 432, 113 N.W. 374, 376 (1907).[1] *See, e.g., Womack v. United States*, 336 F.2d 959 (D.C.Cir. 1964) ["a defendant is entitled to an instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory."]; *People v. Veatch*, 145 Ill. App.3d 23, 99 Ill.Dec. 227, 495 N.E.2d 674, 678 (1986) ["a defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which the defense is based are inconsistent with defendant's own testimony."]; *Pace v. Commonwealth*, 561 S.W.2d 664, 666 (Ky.1978) ["The mere fact that (accident and self-protection) are inconsistent ... should not preclude a jury from considering both theories under appropriate circumstances."]; *People v. Steele*, 26 N.Y.2d 526, 311 N.Y.S.2d 889, 260 N.E.2d 527, 529 (1970) ["Since a jury might disbelieve the alibi and still find, on the prosecution's evidence, that defendant acted justifiably, the prosecution claim of inconsistent defenses is not a bar to the charge requested."]; *State v. Burns*, 15 Or.App. 552, 516 P.2d 748, 750 (1973) ["The

fact that defendant claimed accident ... does not deprive him of the right to an instruction on self-defense if there is also evidence in the record from which the jury could have inferred that defendant was acting in self-defense."]; *Booth v. State*, 679 S.W.2d 498, 501 (Tex.Ct.Crim.App.1984) ["it is permissible for the accused to have the jury decide inconsistent defensive theories, even when they might directly contradict one another."]. *But see United States v. Crowder*, 543 F.2d 312, 317–318 (D.C.Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *State v. Zayas*, 3 Conn.App. 289, 489 A.2d 380, 383 (1985).

Viewing the evidence in the light most favorable to the defendant, we conclude that the record contains evidence sufficient to raise a reasonable doubt on the issues of self-defense and defense of others. The trial court's refusal to instruct the jury on these defenses was therefore error.

■ Under the circumstances of this case, where self-defense and defense of others were Thiel's primary defenses to the simple assault charge, we cannot say that

---

**1.** Statements made by this court in *Schimetz, supra*, as well as in *State v. Skjonsby*, 319 N.W.2d 764 (N.D.1982), may appear to cast doubt on the continuing validity of the principle enunciated in *Hazlett*. However, we believe these decisions are reconcilable.

As we have already noted, in *Schimetz* there was no evidence presented to establish one of the necessary elements of the defense. In *Skjonsby* the defendant asserted that because the trial court believed the evidence was sufficient to warrant instructions on self-defense and defense of others, the trial court erred in refusing to instruct on manslaughter and negligent homicide, lesser included offenses to murder. In rejecting this claim, this court stated:

"Skjonsby's and Charlotte's testimony that the shootings were in self-defense or an accident is a total denial of criminal intent or culpability and is not a mitigating factor to reduce culpability so as to require an instruction on lesser included offenses. Skjonsby's evidence concerning the sequence of events in the room 118 and the State's evidence and theory of the actual shooting are so contrary that it would be an irrational conclusion for a partial acceptance and partial rejection of Skjonsby's evidence and a partial acceptance and a partial rejection of the State's case on these particular events. We are not suggesting that a jury may not reconcile evidence presented and believe a witness in whole or in part. We

believe, however, that the evidence presented as to the actual shootings are so diverse that such a reconciliation would encourage a compromise verdict." *Skjonsby, supra*, 319 N.W.2d at 778.

Rather than repudiating the principle that a defendant is entitled to instructions on inconsistent defense theories when there is evidence to support them, the *Skjonsby* court, like the *Schimetz* court, merely concluded that the evidence in that particular case was not sufficient to warrant the instructions. It has been recognized that there are limits beyond which a jury may not choose evidentiary items from both prosecution and defense witnesses in order to establish the elements of a defense so as to warrant the giving of an instruction:

"[D]espite the jury's broad authority in treating the proofs, the selective process must not be so attenuated as to strain credulity to the breaking point. Among the inquiries we deem relevant when the legitimacy of the process is at stake are whether there must be extensive picking and discarding of evidence, whether the ultimate finding necessitates fragmentation of testimony in such degree as to distort it, and whether facts not supported by proof must be supplied." *Brooke v. United States*, 385 F.2d 279, 283 (D.C.Cir.1967).

We believe that neither *Skjonsby* nor *Schimetz* has implicitly overruled the court's holding in *Hazlett*.

the trial court's refusal to give the instructions constituted harmless error under Rule 52(a), N.D.R.Crim.P. As the court stated in *Strauss v. United States*, 376 F.2d 416, 419 (5th Cir.1967):

"If the trial judge evaluates or screens the evidence supporting a proposed defense, and upon such evaluation declines to charge on that defense, he dilutes the defendant's jury trial by removing the issue from the jury's consideration. In effect, the trial judge directs a verdict on that issue against the defendant. This is impermissible."

*See also United States v. Hicks*, 748 F.2d 854, 857–859 (4th Cir.1984). We therefore reverse the criminal judgment and remand the case for a new trial.

Although we are remanding this case for a new trial, we believe another issue raised by Thiel deserves discussion. Thiel asserts that reversal is required because the prosecutor made an improper and prejudicial comment during closing arguments to the jury.

Although the trial court had refused Thiel's request for jury instructions on self-defense and defense of others, defense counsel during closing argument to the jury said:

"[By Mr. Engel] We have essentially a crowded room in a motel, a small room. A lot of drinking. Young people from Bismarck and from New Salem. A sure formula for a fight sooner or later. And one started. And at the time it started Mark Thiel was outside helping a trucker. Three or four guys had Jeff down between two beds when Mark came into the room. He asked what was happening. And he saw finally that Jeff was in serious trouble, and he began dragging people off of Jeff. Got Jeff up on his feet. And then people piled in on top of Mark. And he defended himself by pushing, shaking people off, and grabbed Jeff and headed for the door. He was essentially trying to stop the fight between Jeff and the others, and to protect himself and to get out of that situation."

During his rebuttal closing argument, the prosecutor said:

"[By Mr. Haskell] Mr. Engel was apparently referring to a self-defense, but, when you look in those instructions you will notice that there is no instruction on self-defense. It's because the Judge decided that there wasn't enough evidence to show that there is self-defense. He didn't give that instruction. The reason he decided that is because as the testimony showed Duane Senger was standing there and never attacked Mark Thiel."

▪ The prosecutor's comments relating to the reasons the trial court did not give the defense's proffered jury instructions were improper. " '[P]rosecuting officials should exercise great care to avoid trading on the name of the trial judge whose function it is to preside as an impartial arbiter.' " *State v. Williams*, 646 S.W.2d 107, 109 (Mo.1983) [quoting *State v. Green*, 292 S.W.2d 283, 288 (Mo.1956)]. Such comments are improper not only because it is "unfair for the prosecutor to throw into the scales the weight of the judge's influence," *United States v. Gambert*, 410 F.2d 383, 385 (4th Cir.1969), but because they constitute a reference to extrarecord matters. *See* Annot., 90 A.L.R.3d 822, 827 (1979). In this case, however, defense counsel did not object to the prosecutor's comments, move for a mistrial, or seek a curative instruction from the trial court.

▪ When an issue has not been properly preserved for review, as in this case, our inquiry is limited to determining whether the error constitutes an obvious error which affects substantial rights of the defendant. Rule 52(b), N.D.R.Crim.P. *State v. Johnson*, 379 N.W.2d 291, 292 (N.D.), *cert. denied*, —— U.S. ——, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986). In cases of nonconstitutional error, our task is to determine whether the error had a significant impact upon the verdict, but we do not have to find that the error was harmless beyond a reasonable doubt.[2] *State v. Janda*, 397 N.W.2d 59, 70 (N.D.1986).

**2.** Thiel asserts that the prosecutor's comments constitute error of constitutional magnitude because it infringed upon his right to a fair trial. We do not believe that every assertion of

We conclude from an examination of the record that the prosecutor's remarks do not rise to the level of obvious error under Rule 52(b), N.D.R.Crim.P. Generally, with some obvious exceptions not applicable in this case, inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. *See generally United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1, 10 (1985). In this case, the prosecutor's remarks were made in response to defense counsel's argument to the jury concerning theories of self-defense and defense of others which defense counsel knew were not to be submitted to the jury. While two improper arguments do not make for a right result, an "invited response" is a proper consideration in determining whether a prosecutor's conduct affected the fairness of the trial. *See Young, supra; cf. State v. Schimmel,* 409 N.W.2d 335 (N.D.1987); *State v. Piper,* 261 N.W.2d 650, 656 (N.D.1977).

While the prosecutor's remarks, standing alone, would be insufficient to require a reversal of this case, in view of our conclusion that there was sufficient evidence to warrant instructing the jury on self-defense and defense of others, the prosecutor's comments accentuated the trial court's error in refusing to instruct the jury on those defenses.

For the reasons stated in this opinion, the judgment is reversed and the case is remanded for a new trial.

trial error followed by the argument that it denied the defendant his constitutional right to a fair trial automatically necessitates that we apply the "harmless beyond a reasonable doubt" standard of review. As the United States Supreme Court has noted in a somewhat analogous context:

"This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). When specific guarantees of the Bill of Rights are involved, this

GIERKE, MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, J., concurs in result.

Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process. We do not believe that examination of the entire proceedings in this case supports that contention." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

*See also State v. Johnson,* 379 N.W.2d 291, 293 (N.D.), *cert. denied,* —— U.S. ——, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986) [distinguishing cases of constitutional error from error found to be "not of constitutional magnitude."] The error in this case is not of constitutional dimension.