STATE of North Dakota, Plaintiff
and Appellee,

v.

Jay Armstrong JONES, Defendant
and Appellant.

Criminal No. 960092.

Supreme Court of North Dakota.

Dec. 4, 1996.

Rehearing Denied Jan. 16, 1997.

M. Kelly Clark, of Clark & Dusek, Grand Forks, for defendant and appellant; Caroline A. Clark, out-of-state counsel, on brief.

Warren D. Johnson, Jr., Assistant State's Attorney, Grand Forks, for plaintiff and appellee; argued by Paul Emerson, third-year law student.

NEUMANN, Justice.

Jones appeals from a terrorizing conviction under N.D.C.C. § 12.1–17–04(1). He argues the trial court erred by improperly allowing the State to reopen its case after it had rested, and by denying his motion for a judgment of acquittal. In addition, Jones argues the State's remarks during closing argument constituted reversible error. We affirm.

On July 3, 1995, Brent Braun hosted a party at his apartment in Grand Forks. Late that evening, guests at the party noticed a red 1984 Buick Skyhawk parked in the apartment complex parking lot. Concerned that the individuals in the Skyhawk might burglarize cars in the lot, the guests told them to leave the area. After an exchange of words, the individuals in the Skyhawk left the area. Later, the Skyhawk returned to the parking lot accompanied by a red Chevy S–10 pickup. Three individuals exited the vehicles and entered the apartment complex. Uninvited, the individuals entered the party and began to verbally abuse the guests. One of the individuals produced a gun, pointed it at Braun, and threatened to kill him if he did not get off the phone.

Braun called the Grand Forks police department. When the officers arrived, many of the guests were standing outside the apartment complex, and Braun was yelling from his third floor balcony stating a person inside his apartment had a gun. The officers entered the complex to apprehend the suspect with the gun. The suspect had fled the scene and could not be found. The officers, however, uncovered several .22 caliber shells in the laundry room garbage.

Jay Jones was named as the individual who had produced the gun. Jones' identification was subsequently confirmed by various witnesses from a photo lineup. The Grand Forks Police Department apprehended Jones and charged him with terrorizing.

On November 29, 1994, a trial was held. During the trial, the State called two members of the Grand Forks Police Department and three witnesses who were at the party and saw Jones produce a gun and threaten Braun. The State rested its case without calling Braun to testify. Jones moved for a judgment of acquittal based on insufficient evidence. The court denied Jones' motion. Believing the State had failed to prove its case, Jones also rested, without presenting evidence. The trial court informed the jury that all the evidence had been presented, and it scheduled closing arguments for the following morning.

The following morning, before closing arguments began, the State asked to call Braun to testify. Jones objected. The court determined the State could call its witness, and that Jones could reopen his case that afternoon if he desired. Jones moved for a mistrial arguing the trial court's decision to allow the State to reopen its case prejudiced him. The court denied his motion. After Braun testified, Jones called one witness who testified Jones did not have a gun on the evening in question. The jury returned a verdict of guilty. Jones appeals.

■ Jones first argues the trial court abused its discretion by·allowing the State to reopen its case after it had rested. Jones argues the trial court's decision to allow more testimony on the morning of November 30, 1996, after declaring to the jury that all the evidence had been presented, gave the prejudicial aura that the new testimony was necessary to ensure the proper outcome of the trial.

Section 29–21–01, N.D.C.C., outlines the order of a trial. Ordinarily, after both parties have rested, closing arguments are made. However, N.D.C.C. § 29–21–02 gives a trial court discretion to change the order of trial under N.D.C.C. § 29–21–01 for good

reason. In *State v. Otto*, 245 N.W.2d 885, 888 (N.D.1976), this court reviewed a trial court's decision to allow the State to reopen its case to cross-examine a defense witness and stated "absent any showing of abuse of a trial court's discretionary power ... this court will not overturn a trial judge's exercise of that power."

Before allowing Braun to testify, the record reflects the court considered both parties' concerns and arguments. Specifically, the court inquired why Braun did not testify the previous day. Satisfied the State had attempted to locate Braun earlier, and that Braun had been disclosed as a possible witness and was not a surprise to the defense, the court exercised its discretion and allowed the testimony. When announcing its decision to the jury, the court was careful not to give undue weight to Braun's testimony. The court merely explained that the State would be calling an additional witness whom it had not been able to locate earlier. The court allowed both sides to reopen their cases, not just the prosecution. In fact, Jones was given a continuance until after lunch. On appeal, Jones suggests he was not given enough time to locate his witnesses and prepare his closing arguments based on the new testimony, but the record does not reflect Jones asked for an extension of the continuance. Because the State had attempted to locate Braun earlier, because Braun was not a surprise witness, and because the trial court addressed the jury in an impartial manner regarding Braun's belated testimony, we do not believe the court abused its discretion by allowing the State to reopen its case after it had rested.

■ Jones' second argument asserts the trial court committed reversible error by refusing to grant his motion for a judgment of acquittal after the State first rested its case. Jones claims the witnesses' testimony at trial was inconsistent concerning the appearance of the gun, the apparel of Jones, and the events of the evening. Based on inconsistent testimony, and the fact the State closed its case without having Braun testify, Jones argues the State failed to prove its case.

■ To grant a judgment of acquittal, a trial court must find "the evidence is insuffi-cient to sustain a conviction of the offenses charged." *State v. Ohnstad*, 359 N.W.2d 827, 834 (N.D.1984); Rule 29(a), N.D.R.Crim.P. Under our standard of review, we will sustain the guilty verdict if "upon reviewing the evidence in a light most favorable to the verdict, we determine that there is substantial evidence to support it." *Ohnstad*, 359 N.W.2d at 834. This standard allows us to review the entire record on appeal, and not just the evidence presented before the motion, to determine whether substantial evidence exists to sustain the verdict. *State v. Schaeffer*, 450 N.W.2d 754, 756 (N.D.1990); *See State v. Allen*, 237 N.W.2d 154, 159 (N.D. 1975) (concluding that "by presenting evidence after a motion for judgment of acquittal is denied ... a defendant permits this court to review the entire record to determine whether sufficient evidence exists to sustain the verdict").

Before the State rested the first time, it had called three witnesses who had attended the party. Each witness confirmed that Jones had produced a gun and had threatened Braun. In addition, the State called Officer Mike Ferguson and Detective Rahn Farder to testify. Officer Ferguson testified that, when he arrived at the scene, people were gathered outside the apartment complex, and Braun was yelling from his balcony that a man with a gun was inside his apartment. Officer Ferguson further testified that he found shells in the laundry room garbage, and that Jones was named as the perpetrator. Detective Farder testified that various witnesses identified Jones from a photo lineup as the person who had the gun and made threats. Besides that testimony, after the State reopened its case, Braun was called as a witness and he identified Jones as the person who pointed a gun at him and threatened to kill him if he did not get off the phone. Because the court heard testimony of three eye witnesses, the victim, and the investigating officers, we believe, after reviewing the evidence in a light most favorable to the verdict, there is substantial evidence to support the verdict.

■ Jones' final argument asserts the State's remarks during closing argument im-

properly prejudiced him and constituted reversible error. Before we examine the challenged remarks, however, we note counsel did not object to the State's remarks at the time they were made. To properly preserve the argument for appeal, Jones should have objected to the statements during the trial.

Jones suggests he should not be prejudiced for failing to object, considering the possible consequences of making an objection during closing arguments in front of the jury. We recognize the legitimacy of Jones' argument. There are risks associated with objecting to opposing counsel's closing argument, such as calling attention to the disagreeable comments or creating resentment among jurors for interrupting the case. Jones, however, could have preserved the issue for appeal in another manner. Rather than interrupting opposing counsel, he could have objected to the remarks after the State's closing arguments were completed, moved for a mistrial, or sought a curative instruction from the trial court. The record does not suggest Jones did any of these. Because Jones did not properly preserve the matter for appeal, our standard of review is that the challenged remarks must constitute "obvious error which affects substantial rights of the defendant." *State v. Thiel*, 411 N.W.2d 66, 70 (N.D.1987); Rule 52(b), N.D.R.Crim.P.

■ Jones' argument focuses on the State's remarks in its rebuttal closing argument. The State argues the remarks were made in response to a comment by defense counsel. According to the transcript, defense counsel stated in closing argument:

> "Be assured, ladies and gentlemen, that I do not believe that Mr. Johnson would bring a case that he didn't believe. However, he can rely only on what the witnesses tell him. If they don't tell him the truth for their own personal benefit, that's where you have to make the decision. Mr. Johnson's job is to tell you the state's side and the witnesses' side of the story. It's my job to tell you the Defendant's side."

In its rebuttal closing argument, the State responded to defense counsel's remarks by stating:

> "I would like to clear up one thing that was totally misstated. It's not my job to prosecute and go after someone. The very basis of my job is to seek the truth. A lot of times in investigations we find a case isn't going the way it looked like it was originally, we don't proceed. We get rid of it. My entire charter is to seek the truth. It is not a mirror imagine [sic] of the defense counsel's job. Defense counsel can defend totally so long as its within the elements of ethics, and that's his whole job is [to] defend by whatever method he can, but I would like to clear that up. It's not just to pick out one individual or prosecute or persecute, as some people like to say, that individual. Seeking the truth."

Jones asserts the State's remark stating it was its job "to seek the truth," was a personal voucher for the truthfulness of the witnesses' testimony and charges against Jones, constituting reversible error.

If the State's remarks had been made in a vacuum, we might well find them prejudicial, and even reversible error. However, the State's remarks were solicited. The remarks were made during closing arguments in response to the defense attorney's suggestion that the State follows what the witnesses tell it, even if the witnesses are not telling the truth. In *State v. Thiel*, we faced a similar issue when a prosecutor improperly responded to a defense attorney's remarks by offering his personal opinion about why a trial court did not instruct on self-defense. In *Thiel*, we stated:

> "In this case, the prosecutor's remarks were made in response to defense counsel's argument to the jury concerning theories of self-defense and defense of others which defense counsel knew were not to be submitted to the jury. While two improper arguments do not make for a right result, an 'invited response' is a proper consideration in determining whether a prosecutor's conduct affected the fairness of the trial. *See* [*United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985) ]; cf. *State v. Schimmel*, 409

N.W.2d 335 (N.D.1987); *State v. Piper*, 261 N.W.2d 650, 656 (N.D.1977)."

*Thiel*, 411 N.W.2d at 71.

As in *Thiel*, the remarks here were solicited or invited. Although we are not suggesting attorneys can respond to opposing counsel's remarks in any manner, in this circumstance, because the defense attorney misrepresented the State's role to the jury, we cannot say the State committed obvious error by making a similar responsive argument.

We affirm defendant's conviction of terrorizing.

VANDE WALLE, C.J., and MARING, SANDSTROM and MESCHKE, JJ., concur.